IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANDY T.L. WILLIAMSON,

      Plaintiff,

v.                                                       Case No. 23-2392-JWB

UNITED PARCEL SERVICE, INC.,

      Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's objection (Doc. 72) to Magistrate Judge Angel D. Mitchell's Report and Recommendation ("R&R") (Doc. 71) recommending that Defendant's Renewed Motion to Transfer to the United States District Court for the Northern District of Georgia (Doc. 70) be granted. After review, Plaintiff's objection is OVERRULED, the court ADOPTS the R&R, and ORDERS the instant action be transferred to the United States District Court for the Northern District of Georgia.

**I.   Facts**

On August 22, 2019, Andy T.L. Williamson ("Plaintiff") was employed by the United Parcel Service ("Defendant"), and he filed an employment discrimination complaint in this court. *See Williamson v. United Parcel Serv., Inc.*, No. CV 19-2506-KHV, 2020 WL 528703 (D. Kan. Feb. 3, 2020) ("*Williamson I*"). In *Williamson I*, Plaintiff alleged violations under Title VII, the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"). (*Id.* at Doc. 42.)

On January 25, 2021, while *Williamson I* was pending, Defendant notified Plaintiff of his position's elimination, effective February 28, 2021. Thereafter, Plaintiff executed a Restructuring

1

Separation Allowance Plan Agreement (the "Agreement") containing a Georgia choice of law provision. Defendant moved to enforce the Agreement—which allegedly required dismissal of *Williamson I* by Plaintiff—and, on September 27, 2021, Senior District Judge Vratil stayed the proceedings in *Williamson I* to allow the parties to seek a ruling from a court in Georgia as to the enforceability of the Agreement. (*Id.* at Doc. 87, 96.) Judge Vratil administratively closed the case with an order requiring party action by September 29, 2023, or the case would be dismissed. (*Id.* at Doc. 97.) No action was taken, and the action was dismissed. (*Id.*)

However, in February 2022, Defendant did file a declaratory judgment action in the Northern District of Georgia. *See United Parcel Serv., Inc. v. Williamson*, No. 1:22-CV-480-MLB, 2022 WL 19333367 (N.D. Ga.) (the "Georgia litigation"). In response, Plaintiff[1] filed a pleading on January 3, 2023, in which he asserted a counterclaim that Defendant breached the Agreement by not timely distributing severance payments and also raised defenses alleging Defendant's discriminatory and retaliatory conduct. (*See id.* at Doc. 19.)[2] The Georgia litigation is the action to which Defendant seeks transfer of the instant action.

On September 6, 2023, Plaintiff filed the instant complaint against Defendant, alleging employment discrimination and retaliation under Title VII, the ADA, and the FMLA. (Doc. 1.) Specifically, Plaintiff claimed that he was discriminated and retaliated against based on Defendant's failure to pay him according to the Agreement. (*Id.* at 3.) Plaintiff filed a charge with the EEOC on December 23, 2021, and received his right to sue letter on May 26, 2023. (*Id.* at 2.)

On January 10, 2025, and in response to a dispute regarding proper venue raised in a proposed pretrial order, Magistrate Judge Mitchell issued a show cause order requiring Plaintiff

---

[1] The court notes that Williamson was the Defendant in the Georgia litigation. But for consistencies sake, he is referred to as Plaintiff for the entirety of this order.
[2] On June 21, 2024, the court in the Georgia litigation dismissed Plaintiff's counterclaim, and issued a sanction for his failure to comply with the court's discovery orders. *See Williamson*, 2022 WL 19333367 at Doc. 54.

2

and Defendant to show why the court should not recommend that the district judge order the instant case transferred to the United States District Court for the Northern District of Georgia, and combined with the Georgia litigation. (Doc. 65.) The show cause order was issued because "it appears that the issues in this lawsuit overlap to some degree with those in the Georgia litigation—specifically, the counterclaim and defenses Williamson asserted there regarding UPS's allegedly discriminatory and retaliatory conduct." (Doc. 71 at 2.) Both parties filed responses. (Docs. 67, 68.) Judge Mitchell issued an order stating that she would await further action in this case until an order from the court in Georgia concerning the appropriate relief is released. (Doc. 69.)

On August 25, 2025, the court in the Georgia litigation found that "it is the first filed forum," and ordered Defendant to "inform the Kansas Court that [the Georgia court did] not object to the transfer." *See Williamson*, 2022 WL 19333367 at Doc. 84. In reviewing this order, along with the other applicable facts and circumstances, Magistrate Judge Mitchell recommended that "this court abstain from exercising its jurisdiction in deference to the first-filed lawsuit and transfer this case to the Northern District of Georgia for consolidation with the [Georgia litigation]" (the "R&R"). (Doc. 71 at 3.) Plaintiff was advised that specific written objections were due within 14 days after being served with a copy of the R&R, and Plaintiff timely objected. (Doc. 72.)

**II.     Standard**

On a dispositive matter the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A failure to properly object, however, leaves a party with no entitlement to appellate review, and allows the district court to review the R&R under any standard it deems appropriate. *See Williams v. United States*, No. 19-2476-JAR-JPO, 2019 WL 6167514, at *1 (D. Kan. Nov. 20, 2019) (citing *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996)) ("The Tenth

Circuit requires that objections to a magistrate judge's recommended disposition 'be both timely and specific to preserve an issue for de novo review by the district court . . .'").

Because Plaintiff is proceeding pro se, the court is to liberally construe his filings. *United States v. Pinson*, 585 F.3d 972, 975 (10th Cir. 2009). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

### III.   Analysis

Plaintiff argues that the first-to-file rule does not apply, and therefore the instant case should not be transferred to Georgia, because (1) his counterclaim in the Georgia litigation was dismissed and, alternatively, (2) the issues in the two cases are different. (Doc. 72 at 2–3.) Based on the following, the court finds these objections unpersuasive.

Federal district courts are courts of coordinate jurisdiction and rank; thus, they must be careful to avoid interfering in each other's affairs. *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477 (10th Cir. 1999). To further the achievement of this goal, the "first-to-file" rule permits a district court to decline jurisdiction where a complaint raising substantially similar issues against the same party has previously been filed in another district court. *Id*. As such, the first-to-file rule applies "[w]hen two federal suits are pending." *Wakaya*, 910 F.3d at 1124; *see also Ed Tobergte Assocs. v. Zide Sport Shop of Ohio, Inc.*, 83 F.Supp.2d 1197, 1198 (D. Kan. 1999) (applying this rule "to situations in which essentially the same issues and litigants are involved in two substantially identical causes of action before federal courts in different districts."). Thus, merely because Plaintiff's counterclaim in the Georgia litigation was dismissed, the case is still pending (*see Williamson*, 2022 WL 19333367 at Doc. 84), therefore it is within this court's discretion to apply the first-to-file rule in the instant matter.

Next, "[t]he first-to-file rule 'permits, but does not require, a federal district court to abstain from exercising its jurisdiction in deference to a first-filed case in a different federal district court.'" *Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 814–15 (10th Cir. 2023) (citing *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018)) (internal quotation marks omitted). The relevant factors a court should address when determining whether to transfer the case to the first-filed court "include, but are not limited to: '(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake.'" *Id*. (internal quotation marks omitted). Plaintiff's argument that the Georgia litigation involved only breach of contract claims while the instant case involves civil rights, FMLA, and ADA claims fundamentally mischaracterizes the factual overlap underpinning the two actions. (Doc. 72 at 2–3.) Moreover, both arise from the same employment termination, the same severance agreement, and Plaintiff's own allegations in Georgia that Defendant retaliated against him for taking FMLA leave. (*Id*.) To the extent that the two claims do not overlap, there is no requirement that they be identical. *See Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1298 (D. Kan. 2010) (citing *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F.Supp.2d 686, 688 (E.D.Tenn.2005)) ("[T]he first-to-file rule does not require identity of claims, since 'there need be only substantial overlap for the actions to be duplicative and to thus implicate the first-to-file rule.'").

Turning to the factors used to determine whether to transfer to the first-filed court, the court finds no grounds for concluding that the two claims are not substantially similar, thus transfer is strongly favored. First, starting with the chronology of events, the Georgia litigation was filed on February 4, 2022 (*Williamson*, 2022 WL 19333367 at Doc. 1) nearly twenty months before the instant complaint was filed on September 6, 2023. (Doc. 1.) Second, as for similarity of the

5

parties, both actions involve the same parties: Plaintiff and Defendant. (*Id.*; *Williamson*, 2022 WL 19333367 at Doc. 1.) Third, there is significant overlap in the issues and claims at stake in the two actions. Specifically, Plaintiff's counterclaim in the Georgia litigation challenged UPS's post-termination withholding of severance benefits and he asserted defenses and allegations concerning UPS's alleged discrimination and retaliation. *Williamson*, 2022 WL 19333367 at Doc. 24 (stating "[UPS] did not pay [s]everance [p]ay as agreed" under the Agreement and "[r]etaliation . . . for [Williamson] taking FMLA.") These claims mirror the claims in the current litigation, as both are intertwined with the enforceability of the severance payment under the Agreement, and both were first raised in the Georgia litigation. *See Thrivent Fin. for Lutherans v. Croisant*, No. CIV.A. 04-2317-GTV, 2004 WL 2452994, at *2 (D. Kan. Oct. 26, 2004) (dismissing defendants "counterclaims . . . based on the principles of the first-to-file rule."). Finally, while Plaintiff objects to transfer on the grounds that it "will not be convenient" because Plaintiff lives in Kansas, the court notes that it was Plaintiff's action of filing a counterclaim in Georgia that invoked the application of the first-to-file rule in the first instance. That objection is unpersuasive.

Based on the factors identified by the Tenth Circuit in *Quint v. Vail Resorts, Inc.*, 89 F.4th at 814–15, the court finds that abstaining from exercising its jurisdiction in deference to the first-filed Georgia litigation would further the "just, speedy, and inexpensive" determination of the parties' disputes. *See* Fed. R. Civ. P. 1. Abstention and transfer to consolidate the two cases would avoid duplication of efforts and the risk of inconsistent results.

Finally, Plaintiff argues that transfer of this case will amount to an injustice because the Georgia court "does not allow prose [sic] litigants to file any electronic documents," and is biased against him based on prior adverse rulings (sanctions for missing deposition and dismissal of counterclaim). (Doc. 72 at 2–4) (emphasis removed). Plaintiff offers no legal or factual support

6

for these conclusory objections. In reviewing the record, the court finds that Plaintiff has filed electronic documents in the Georgia litigation—e.g., the counterclaim that invoked the first-to-file rule. (*See Williamson*, 2022 WL 19333367 at Doc. 19.) And the mere assertion that the Georgia court is biased based on prior adverse rulings that favor defendant is wholly unpersuasive. *In re Bamba*, No. 25-1073, 2025 WL 2730585, at *1 (10th Cir. 2025) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)) ("[I]t is well established that 'judicial rulings alone almost never constitute a valid basis for a bias or partiality. . . .'"). Thus, the court finds Plaintiff's remaining objections either wholly unsupported by law or contradicted by the facts of record, and therefore frivolous and unpersuasive.

**IV.    Conclusion**

Plaintiff's objection (Doc. 72) is OVERRULED and the motion to Transfer Case to the United States District Court for the Northern District of Georgia (Doc. 70) is GRANTED. For the reasons stated in Magistrate Judge Mitchell's R&R and the reasons stated herein, the court ADOPTS the R&R. (Doc. 71.)

The clerk is instructed to transfer this matter to the United States District Court for the Northern District of Georgia.

IT IS SO ORDERED. Dated this 2nd day of October, 2025.

    _s/ John W. Broomes_____
    JOHN W. BROOMES
    CHIEF UNITED STATES DISTRICT JUDGE